UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHAEL WALTER PAYETTE,

        Plaintiff,         Case No. 2:09-cv-276

v.         Honorable R. Allan Edgar

UNKNOWN DEATSMAN et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Barney, Maki and Bonevelle and all counts except Plaintiff's claims against Defendants Deatsman and Steinman of retaliation and conspiracy to retaliate in Counts 1 and 4, which will be served.

**Discussion**

I.       Factual allegations

Plaintiff currently is incarcerated at Alger Maximum Correctional Facility (LMF). In his *pro se* complaint, he sues LMF Corrections Officers unknown Deatsman, unknown Steinman, and unknown Barney. He also sues Hearings Officer Linda Maki and Hearing Investigator Mary Bonevelle. Plaintiff alleges that Defendant Deatsman retaliated against him for filing prior grievances. He claims that Deatsman told him that prisoners are not human beings on August 18, 2008 and again on November 17, 2009.[1] (Compl. at 4.) Plaintiff alleges that on August 18, he returned to his cell and noticed that his legal papers had been moved and a copy of a Maxim magazine had been removed from his cell. He also asserts that Defendant Steinman refused to put cleanser on Plaintiff's brush or give him the weekly roll of toilet paper. Later that night, Plaintiff was given a major misconduct by Defendant Steinman for substance abuse regarding two aspirin and three ibuprofen that Defendant Steinman removed from Plaintiff's cell. However, Plaintiff had other ibuprofen in a bottle in his cell that were not removed.

Plaintiff gave a written statement to Defendant Bonevelle for Defendant Maki's review. In the statement, Plaintiff alleged that Defendant Steinman retaliated against him for filing numerous grievances. Plaintiff also alleged a conspiracy between Deatsman and Steinman to retaliate against him by removing his Maxim magazine.

Plaintiff asserts that Bonevelle fabricated an investigation report indicating Plaintiff said that he did not want anything to do with the investigation. After a hearing on September 3, 2008, Plaintiff was found guilty of substance abuse and given twelve days loss of

---

[1]Plaintiff uses both dates August 18, 2008 and 2009. (Compl. at 4.) The exhibits indicate that the incidents occurred in 2008. (E.g., Exs. D, E, docket #1-2.) Therefore, the Court uses 2008 in this opinion.

privileges. Plaintiff claims that he attended the hearing, but that his initial statement was never read. Plaintiff submitted at the hearing an additional, more thorough, statement about the alleged retaliation. Later that evening, Defendant Barney gave Plaintiff a hearing report adjudication, but did not return the aspirin.

Plaintiff brings seven claims against Defendants. First, Plaintiff alleges that Defendants retaliated against him for filing multiple grievances. Second, Plaintiff claims that Deatsman, Steinman, Bonevelle and Maki stole his property. Third, Plaintiff alleges that Deatsman and Steinman violated his Fourth Amendment rights by searching his cell and taking his legal documents, aspirin, ibuprofen, and a Maxim magazine. Fourth, Plaintiff asserts that Steinman and Deatsman conspired to retaliate against him for filing grievances. He further alleges that Defendants Maki and Bonevelle conspired against him. Fifth, Plaintiff claims that Deatsman and Steinman conspired to commit larceny by stealing his Maxim magazine. Sixth, Plaintiff alleges that Bonevelle and Maki destroyed his statement in order to interfere with a future federal investigation or lawsuit. Seventh, Plaintiff claims that personal property was taken from his cell, including a Maxim magazine, ibuprofen, and aspirin, violating his property and due process rights. Plaintiff seeks compensatory and punitive damages.

II.     Immunity

Defendant Maki is a hearing officer whose duties are set forth at MICH. COMP. LAWS § 791.251 through § 791.255. Hearing officers are required to be attorneys and are under the direction and supervision of a special hearing division in the Michigan Department of Corrections. *See* MICH. COMP. LAWS § 791.251(e)(6). Their adjudicatory functions are set out in the statute, and their decisions must be in writing and must include findings of facts and, where appropriate, the

sanction imposed. *See* MICH. COMP. LAWS § 791.252(k). There are provisions for rehearings, *see* MICH. COMP. LAWS § 791.254, as well as for judicial review in the Michigan courts. *See* MICH. COMP. LAWS § 791.255(2). Accordingly, the Sixth Circuit has held that Michigan hearing officers are professionals in the nature of administrative law judges. *See Shelly v. Johnson*, 849 F.2d 228, 230 (6th Cir. 1988). As such, they are entitled to absolute judicial immunity from inmates' § 1983 suits for actions taken in their capacities as hearing officers. *Id.*; *and see Barber v. Overton*, 496 F.3d 449, 452 (6th Cir. 2007); *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007); *cf. Pierson v. Ray*, 386 U.S. 547, 554-55 (1967) (judicial immunity applies to actions under § 1983 to recover for alleged deprivation of civil rights). Therefore, the complaint against Defendant Maki will be dismissed.

### III. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' .

. . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Due Process

Plaintiff alleges that Defendants Steinman and Deatsman committed larceny of his property and committed larceny by removing the ibuprofen, aspirin and a Maxim magazine. To the extent that Plaintiff requests criminal charges be brought against Defendants, he fails to state a claim. A private citizen "lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Diamond v. Charles*, 476 U.S. 54, 63 (1986). Simply put, Plaintiff cannot compel a criminal prosecution of Defendants because private citizens, whether or not they are incarcerated, cannot compel a criminal prosecution of another. *See Diamond v. Charles*, 476 U.S. 54, 64-65 (1986); *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *Martin v. Koljonen*, No. 03-2169, 2004 WL 445720, at *1 (6th Cir. Mar. 9, 2004).

To the extent that Plaintiff alleges that his due process rights were violated by the alleged theft of personal property from his cell, his claims are barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized negligent acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Nov. 15, 2004). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. MICH. COMP. LAWS § 600.6419; Policy Directive, 04.07.112, ¶ B. Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards,

institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, counts two, five and seven will be dismissed.

### B.     Unreasonable Search and Seizure

Plaintiff alleges that his Fourth Amendment rights were violated when Defendants Deatsman and Steinman searched his cell. Prisoners have no Fourth Amendment right protecting them from searches.

> A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order. We are satisfied that society would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security. We believe that it is accepted by our society that "[l]oss of freedom of choice and privacy are inherent incidents of confinement."

*Hudson v. Palmer*, 468 U.S. 517, 527-528 (1984). While an inmate's property cannot be destroyed with impunity, "[p]rison officials must be free to seize from cells any articles which, in their view, disserve legitimate institutional interests." *Id.* at n.8; *see Padgett v. Donald*, 401 F.3d 1273, 1278 (11th Cir.2005) ("[p]risoners have no Fourth Amendment rights against searches of their prison cells"). Therefore, Plaintiff's allegations that his Fourth Amendment rights were violated fail to state a claim and Count three will be dismissed.

### C. Access to the Courts

Plaintiff claims that Defendants Maki and Bonevelle interfered with the filing of a federal lawsuit by destroying the first statement he wrote asserting that Steinman retaliated against him by writing the misconduct report. (Compl. at 2.) Plaintiff does not say what constitutional right was violated, but this Court construes his allegations as a claim that Defendants interfered with Plaintiff's right of access to the courts. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop v. Johnson*, 977 F.2d 996, 1000 (6th Cir. 1992); *Ryder v. Ochten*, No. 96-2043, 1997 WL 720482, *1-2 (6th Cir. Nov. 12, 1997). In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim of a direct appeal, a habeas corpus petition or a civil rights claim. *Lewis*, 518 U.S. at 351-353; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

Plaintiff cannot demonstrate that he sustained an actual injury. Even assuming that Defendants Maki and Bonevelle had destroyed his first statement, Plaintiff admits that he created and submitted a "second more thorough written statement of retaliation" at the time of the hearing. (Compl. at 7.) The second statement could be used by Plaintiff in any future lawsuit. Additionally, Plaintiff does not allege that he actually attempted to file a lawsuit or that Defendants interfered with Plaintiff's efforts to pursue a nonfrivolous legal claim. An inmate must make a specific claim that he was adversely affected or that the litigation was prejudiced. *Vandiver v. Niemi*, No. 94-1642, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994). Therefore, he fails to state a claim that he was denied access to the courts and Count six will be dismissed.

### D. Retaliation

Plaintiff asserts that Defendants Deatsman and Steinman retaliated against him because he filed twenty grievances in twenty days. Plaintiff states that they removed legal papers, a Maxim magazine, ibuprofen and aspirin from his cell. Defendant Steinman then filed a major misconduct against him for possession of the ibuprofen and aspirin. Plaintiff claims that Defendant Barney did not return the aspirin to him in retaliation for the multiple grievances that Plaintiff had filed. Plaintiff further alleges that Defendants Bonevelle and Maki threw away his first statement because it contained claims of retaliation against their co-workers.

In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, in least in part, by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). Moreover, Plaintiff must be able to prove that the exercise of the protected

right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Regarding the first prong, the filing of grievances is constitutionally-protected conduct for which a prisoner cannot be subjected to retaliation. *Shehee*, 1999 WL 1029294, at *4. Therefore, Plaintiff's claims are sufficient to allege that he was engaged in protected conduct. Assuming that the adverse action alleged was sufficient to deter a person of ordinary firmness, he fails to demonstrate that the adverse action was motivated by the protected conduct. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Ashcroft*, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive); *Birdo v. Lewis*, No. 95-5693, 1996 WL 132148, at *1 (6th Cir. Mar. 21, 1996); *Fields v. Powell*, No. 94-1674, 1995 WL 35628, at *2 (6th Cir. Jan. 30, 1995); *Williams v. Bates*, No. 93-2045, 1994 WL 677670, at *3 (6th Cir. Dec. 2, 1994). Plaintiff's claims against Defendants Barney, Maki and Bonevelle merely alleges the ultimate fact of retaliation in this action. He has not presented any

facts to support his conclusion that Defendants Barney, Maki and Bonevelle retaliated against him because he filed grievances against some other, unnamed officers. Accordingly, his speculative allegations fail to state a claim against Defendants Barney, Maki and Bonevelle.

However, Plaintiff's allegations of retaliation by Defendants Deatsman and Steinman are sufficient to state a claim and will be served.

### E. Conspiracy

Plaintiff claims that Defendants Deatsman and Steinman conspired to retaliate against him and remove property from his cell. (Compl. at 20.) He also alleges that Defendants Maki and Bonevelle conspired against him. (*Id.* at 7.) To state a claim for conspiracy, a plaintiff must plead with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Smith v. Rose*, 760 F.2d 102,106 (6th Cir. 1985); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996). A plaintiff's allegations must show (1) the existence or execution of the claimed conspiracy, (2) overt acts relating to the promotion of the conspiracy, (3) a link between the alleged conspirators, and (4) an agreement by the conspirators to commit an act depriving plaintiff of a federal right. *Lepley v. Dresser*, 681 F.Supp. 418, 422 (W.D. Mich. 1988). "[V]ague allegations of a wide-ranging conspiracy are wholly conclusory and are, therefore, insufficient to state a claim." *Hartsfield v. Mayer*, No. 95-1411, 1196 WL 43541, at *3 (6th Cir. Feb. 1, 1996). A simple allegation that defendants conspired to cover up wrongful actions is too conclusory and too speculative to state a

claim of conspiracy. *Birrell v. State of Mich.,* No. 94-2456, 1995 WL 355662, at *2 (6th Cir. June 13, 1995). Plaintiff's allegations of conspiracy are vague, conclusory and speculative. Therefore, he fails to state a claim for conspiracy. Accordingly, count four, Plaintiff's civil conspiracy claim against Defendants Maki and Bonevelle will be dismissed as without merit. Plaintiff's claims against Defendants Deatsman and Steinman are sufficient to state a claim and will be served.

### **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Defendants Barney, Maki and Bonevelle and all counts except Plaintiff's claims against Defendants Deatsman and Steinman of retaliation and conspiracy to retaliate in Counts 1 and 4 will be dismissed for immunity and/or failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve Plaintiff's claims of retaliation and conspiracy to retaliate against Deatsman and Steinman.

An Order consistent with this Opinion will be entered.

Dated:  3/9/2010                           */s/ R. Allan Edgar*
                                            R. Allan Edgar
                                            United States District Judge