UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHAEL WALTER PAYETTE,

        Plaintiff,                    Case No. 2:09-cv-276

v.                                            Honorable R. Allan Edgar

UNKNOWN DEATSMAN et al.,

        Defendants.
_____/

## **OPINION**

Plaintiff Michael Walter Payette, an inmate currently confined at the Baraga Maximum Correctional Facility (AMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against LMF Corrections Officers unknown Deatsman, unknown Steinman, and unknown Barney. He also sues Hearings Officer Linda Maki and Hearing Investigator Mary Bonevelle. Plaintiff alleges that Defendant Deatsman retaliated against him for filing prior grievances. He claims that Deatsman told him that prisoners are not human beings on August 18, 2008 and again on November 17, 2009.[1] (Compl. at 4.) Plaintiff alleges that on August 18, he returned to his cell and noticed that his legal papers had been moved and a copy of a Maxim magazine had been removed from his cell. He also asserts that Defendant Steinman refused to put cleanser on Plaintiff's brush or give him the weekly roll of toilet paper. Later that night, Plaintiff was given a major misconduct by Defendant Steinman

---

[1] Plaintiff uses both dates August 18, 2008 and 2009. (Compl. at 4.) The exhibits indicate that the incidents occurred in 2008. (E.g., Exs. D, E, docket #1-2.) Therefore, the Court uses 2008 in this opinion.

for substance abuse regarding two aspirin and three ibuprofen that Defendant Steinman removed from Plaintiff's cell. However, Plaintiff had other ibuprofen in a bottle in his cell that were not removed.

Plaintiff gave a written statement to Defendant Bonevelle for Defendant Maki's review. In the statement, Plaintiff alleged that Defendant Steinman retaliated against him for filing numerous grievances. Plaintiff also alleged a conspiracy between Deatsman and Steinman to retaliate against him by removing his Maxim magazine.

Plaintiff asserts that Bonevelle fabricated an investigation report indicating Plaintiff said that he did not want anything to do with the investigation. After a hearing on September 3, 2008, Plaintiff was found guilty of substance abuse and given twelve days loss of privileges. Plaintiff claims that he attended the hearing, but that his initial statement was never read. Plaintiff submitted at the hearing an additional, more thorough, statement about the alleged retaliation. Later that evening, Defendant Barney gave Plaintiff a hearing report adjudication, but did not return the aspirin.

Plaintiff brings seven claims against Defendants. First, Plaintiff alleges that Defendants retaliated against him for filing multiple grievances. Second, Plaintiff claims that Deatsman, Steinman, Bonevelle and Maki stole his property. Third, Plaintiff alleges that Deatsman and Steinman violated his Fourth Amendment rights by searching his cell and taking his legal documents, aspirin, ibuprofen, and a Maxim magazine. Fourth, Plaintiff asserts that Steinman and Deatsman conspired to retaliate against him for filing grievances. He further alleges that Defendants Maki and Bonevelle conspired against him. Fifth, Plaintiff claims that Deatsman and Steinman conspired to commit larceny by stealing his Maxim magazine. Sixth, Plaintiff alleges that Bonevelle and Maki destroyed his statement in order to interfere with a future federal investigation or lawsuit. Seventh, Plaintiff claims that personal property was taken from his cell, including a Maxim magazine,

ibuprofen, and aspirin, violating his property and due process rights. Plaintiff seeks compensatory and punitive damages.

On March 9, 2010, the court dismissed Plaintiff's action against Defendants Barney, Maki and Bonevelle, as well as all other counts except Plaintiff's claims against Defendants Deatsman and Steinman of retaliation and conspiracy to retaliate. (Docket #5 and #6.) Presently before the Court is the Defendants' Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff failed to file a response despite being granted an extension of time in which to do so (docket #17) and the matter is ready for decision.

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his

3

burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Defendants Deatsman and Steinman claim that they are entitled to summary judgment because Plaintiff failed to exhaust his available administrative remedies. Pursuant to the applicable portion of the Prison Litigation Reform Act (PRLA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See*

4

*Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶ P. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ X.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a

medical care grievances. *Id.* at ¶ GG. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III. *Id.* at ¶ FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ X. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id* at ¶ HH.

Defendants offer a copy of the grievance inquiry on Plaintiff, which shows that he filed forty-eight step III grievances while incarcerated at LMF. (Defendants' Exhibit B.) The record shows that each of these grievances was filed at step I prior to the alleged misconduct of Defendants Deatsman and Steinman. In addition, MDOC Office of Legal Affairs Administrator Richard Stapleton attests that no grievances regarding this incident have been pursued through step III, as required by MDOC policy. (Defendants' Exhibit C, ¶ 16.)

In his affidavit, Stapleton attests that Plaintiff was placed on modified access to the grievance procedure from August 13, 2008, until November 11, 2008. Under Michigan Department of Corrections policy, a prisoner is placed on modified access for filing "an excessive number of grievances which are frivolous, vague, duplicative, non-meritorious, raise non-grievable issues, or contain prohibited language. . .or [are] unfounded . . . ." MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ HH. (eff. July 9, 2007). The modified access period is ninety days and may be extended an additional thirty days for each time the prisoner continues to file a prohibited type of grievance. *Id.* While on modified access, the prisoner only can obtain grievance forms through the Step I

coordinator, who determines whether the issue is grievable and otherwise meets the criteria under the grievance policy. *Id.*, ¶ KK.

As noted above, Plaintiff did not file a step III grievance in accordance with policy in order to grieve his claims against Defendants Deatsman and Steinman. Despite being on modified access, Plaintiff could have obtained a grievance form from the Step I coordinator and pursued his claims through step III of the grievance procedure. Plaintiff failed to comply with MDOC policy regarding the filing of grievances. Therefore, the court concludes that Plaintiff has failed to exhaust his administrative remedies as to Defendants Deatsman and Steinman.

In light of the foregoing, the court concludes that Plaintiff has failed to sustain his burden of proof in response to Defendants' motion for summary judgment. Accordingly, the court will grant Defendants' Motion for Summary Judgment (docket #12) and dismiss this case in its entirety.

An Order and Judgment consistent with this Opinion will be entered.

Dated: 3/30/2011     /s/ R. Allan Edgar
                     R. Allan Edgar
                     United States District Judge